IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TINA MARIE NALLY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-1631-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tina Marie Nally seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that she is disabled as a result of injuries to her left collar bone and right wrist. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on July 2, 2007. At the time of the hearing, plaintiff was 44 years old. She is a high school graduate with past work experience as an apartment cleaner. Plaintiff has not engaged in substantial gainful activity since August 15, 2003.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that plaintiff suffered from right wrist, left clavicle, and left shoulder impairments, all repaired with surgery, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security

regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform sedentary work with no overhead reaching on the left and only occasional gross and fine motor use of her right arm, hand, wrist, and fingers, but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a button reclaimer, a table worker, and a film inspector -- jobs that exist in significant numbers in the national economy. Given her age, education, and residual functional capacity for sedentary work, the judge determined that plaintiff was not disabled under the Medical-Vocational Guidelines. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In her sole ground for relief, plaintiff contends that the hearing decision is not supported by substantial evidence because the ALJ failed to resolve inconsistencies between his residual functional capacity finding, vocational expert testimony, and job descriptions in the *Dictionary of Occupational Titles* ("DOT").

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must

scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

At the administrative hearing, the ALJ asked Talesia Beasley, a vocational expert, whether a hypothetical person of plaintiff's age, education, work experience, and functional limitations could perform any jobs that exist in significant numbers in the national economy. (*See* Tr. at 494). Among the functional limitations included in the hypothetical are "no overhead reaching on the left side and only occasional gross or fine manipulation of the handling or fingering on the right." (*Id.*). Beasley

testified that such a person could work as a button reclaimer, a film touch-up inspector, and a table worker. (*Id.* at 495). According to plaintiff, those jobs, as described in the DOT, require abilities beyond her residual functional capacity. (*See* Plf. MSJ Br. at 12-16).

The DOT was promulgated by the Department of Labor to provide "standardized occupational information to support job placement activities." *See* DOT at xv (4th ed. 1991). The DOT, along with a companion volume -- *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") -- contain descriptions of the requirements for thousands of jobs in the national economy and classifies those jobs based on various factors. The job of button reclaimer, as defined in the DOT, involves:

> Examin[ing] buttons for defects, such as chips and cracks, and separat[ing] defective buttons from acceptable ones.

DOT § 734.687-042 (button reclaimer). The DOT describes the job of film touch-up inspector as:

> Inspect[ing] and repair[ing] circuitry image on photoresist film (separate film or film laminated to fiberglass boards) used in manufacture of printed circuit boards (PCB's): Inspects film under magnifying glass for holes, breaks, and bridges (connections) in photoresist circuit image. Removes excess photoresist, using knife. Touches up holes and breaks in photoresist circuitry image, using photoresist ink pen. Removes and stacks finished boards for transfer to next work station. Maintains production reports. May place lint free paper between dry film sheets to avoid scratching circuit images on film.

DOT § 726.684-050 (film touch-up inspector). The job of table worker involves:

> Examin[ing] squares (tiles) of felt-based linoleum material passing along on conveyor and replac[ing] missing and substandard tiles.

DOT § 739.687-182 (table worker). The button reclaimer and table worker jobs require "frequent" reaching, handling and fingering, which is defined by the DOT as "exist[ing] from 1/3-2/3 of the time." DOT §§ 734.687-042 & 739.687-182. The film touch-up inspector job requires "constant"

reaching, handling and fingering, which is defined by the DOT as "exist[ing] 2/3 or more of the time." *Id.* § 726.684-050. Because the ALJ found that plaintiff has only "occasional" gross and fine motor use of her dominant right arm, hand, wrist, and fingers, (*see* Tr. at 19),[1] plaintiff contends that the jobs identified by Beasley -- all of which require either "frequent" or "constant" reaching, handling, or fingering -- conflict with the applicable DOT job descriptions.

There is a split of circuit authority as to whether vocational expert testimony can provide substantial evidence to support the Commissioner's decision when it conflicts with the DOT provisions. Some courts permit the ALJ to rely on such testimony even if it conflicts with the DOT. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1723 (2000); *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995); *Sawyer v. Apfel*, No. 98-1520, 1998 WL 830653 at *1 (4th Cir. Dec. 2, 1998). By contrast, the Eighth Circuit has held that the DOT job descriptions are generally more reliable than the conflicting testimony of a vocational expert. *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995). Still other courts, including the Fifth Circuit, have adopted a "middle ground" approach which allows the ALJ to rely on vocational expert testimony if the record reflects an adequate basis or a reasonable explanation for deviating from the DOT. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000); *Haddock v. Apfel*, 196 F.3d 1084, 1091-92 (10th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1434-35 (9th Cir. 1995); *Tom v. Heckler*, 779 F.2d 1250, 1255-56 (7th Cir. 1985); *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984). In *Carey*, the Fifth Circuit held that:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . ., we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis

---

[1] "Occasional" is defined in the social security regulations as "occurring from very little up to one-third of the time." *See* SSR 96-9p, 1996 WL 374185 at *3 (SSA Jul. 2, 1996).

> for doing so . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey*, 230 F.3d at 146-47. Although *Carey* did not involve "the type of direct and obvious conflict . . . when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT," *id.* at 145-46, lower courts that have considered such direct conflicts have also adopted this "middle ground" approach. *See, e.g. Johnson v. Barnhart*, 285 F.Supp.2d 899, 913-14 (S.D. Tex. 2003); *Augustine v. Barnhart*, No. 1-00-CV-749, 2002 WL 31098512 at *9-10 (E.D. Tex. Aug. 27, 2002); *Hollan v. Apfel*, No. 3-00-CV-0002-H, 2001 WL 180151 at *6 (N.D. Tex. Feb. 20, 2001). Thus, at least in this circuit, vocational expert testimony may be accepted over a conflicting DOT provision if "the record reflects an adequate basis for doing so." *Carey*, 230 F.3d at 146.

Plaintiff argues that the reaching, handling, and fingering activities listed in the DOT job descriptions for button reclaimer, table worker, and film touch-up inspector require the use of both hands, and that the vocational expert erroneously assumed that work performed with a non-dominant left hand would produce the same results at the same speed as work performed with a dominant and functionally limited right hand. (*See* Plf. MSJ Br. at 15). These issues were fully explored at the administrative hearing. During cross-examination by plaintiff's counsel, Beasley was asked whether her testimony conflicted with the DOT given that plaintiff has only "occasional" use of her dominant right hand for handling and fingering activities:

> Q: Okay, so if the film touch-up inspector required reaching, I mean constant handling and fingering wouldn't that conflict with your testimony?

> A: No, because she could use her left. I mean when you inspect something basically your main concern is your eyes because you're looking for imperfections within something and so as long as she's got use with her left hand she could pick up a film that had an imperfection in it with her left hand--
>
> Q: All right.
>
> A: -- and just use her right hand more or less as a guide. It wouldn't necessarily have to be picked up with her right hand.
>
> Q: So, again if the other jobs you identified in the Dictionary of Occupational Titles if they describe them as requiring frequent handling and fingering you would not consider that a conflict with your testimony?
>
> A: No, I would not because all three of those jobs are basically inspecting and the main concern is [sic] inspecting is your visual.
>
> Q. All right.
>
> A. Because every piece of item that you're looking at you're not going to have to pick up, only the ones that have the imperfections that you're actually looking for because you're inspecting the material or the merchandise or the product or whatever the case is and if she's got the ability to pick up something on the left then she can pick it up with her left hand because it's all below 10 pounds. It is a sedentary position.

(Tr. at 497-98). Based on this testimony, the ALJ found that Beasley's testimony was consistent with the information contained in the DOT. (*Id.* at 23).

That finding is supported by substantial evidence. "The DOT and the SCO do not separately classify reaching, handling or fingering with one hand, or both hands, or the dominant or non-dominant hand." *Williams v. Astrue*, No. 09-CV-1341-SAC, 2010 WL 4291918 at *8 (D. Kan. Oct. 26, 2010). Under the DOT, a job requiring "frequent" or "constant" handling and fingering does not necessarily require that a claimant be able to frequently or constantly handle and finger with both

hands or with the non-dominant hand. *Id.*; *see also Canton v. Astrue*, No. 08-CV-3038, 2010 WL 5391184 at *7 (E.D.N.Y. Dec. 22, 2010) (noting that "[w]here both hands are required to perform a listed job, the DOT has not been shy in saying so"). To the extent the vocational expert's testimony impliedly or indirectly conflicts with the DOT job descriptions for button reclaimer, table worker, and film touch-up inspector, Beasley explained that the "main concern" of all three jobs is visual inspection, not the ability to use both hands. (*See* Tr. at 497). If plaintiff needed to pick up an object to look for imperfections, Beasley said that she could easily do so with her non-dominant left hand. (*Id.* at 497-98). The ALJ properly relied on this explanation in finding that plaintiff had the residual functional capacity to perform these jobs, even with her manipulative limitations.[2]

Plaintiff also faults the ALJ for not asking the vocational expert about any possible conflicts between her testimony and the DOT. *See* SSR 00-4p, 2000 WL 1898704 at *1 (SSA Dec. 4, 2000) (establishing procedure for resolving conflicts in occupational information). As previously discussed, there was no direct conflict between the vocational expert's testimony and the DOT job descriptions because neither the DOT nor the SCO impose a bilateral manual dexterity or a dominant hand use requirement for the jobs of button reclaimer, table worker, and film touch-up inspector. To the extent an implied or indirect conflict exists, the court has found that the vocational expert adequately explained her reasons for deviating from the DOT job descriptions. Under these circumstances, remand is not required. *See Washington v. Astrue*, No. 4-07-CV-770-Y, 2009 WL

---

[2] In her brief, plaintiff makes a passing reference to SSR 96-9p, which provides that "any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *See* SSR 96-9p, 1996 WL 374185 at *8 (SSA Jul. 2, 1996) (emphasis in original). That may be true as a general proposition. But the vocational expert explained that the jobs of button reclaimer, table worker, and film touch-up inspector primarily involve visual inspection, and that plaintiff's inability to frequently or constantly use her right hand was not a concern. (*See* Tr. at 497-98). That explanation constitutes substantial evidence to support the hearing decision and is not inconsistent with SSR 96-9p.

536104 at *3-4 (N.D. Tex. Mar. 3, 2009) (affirming Commissioner's decision where no "material conflict" existed between vocational expert testimony and DOT).

## CONCLUSION

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: August 29, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE